## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| T.C. as next friend of STUDENT, <br> a minor child | § <br> § <br> § | |
| **Plaintiff** | § <br> § | |
| VS. | § <br> § | Case No. 4:13cv186 |
| LEWISVILLE INDEPENDENT <br> SCHOOL DISTRICT | § <br> § <br> § | |
| **Defendant** | § <br> § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendant Lewisville Independent School District's Motion for Judgment on the Administrative Record (Dkt. 54) and Plaintiff's Motion for Judgment on the Administrative Record (Dkt. 55). As set forth below, the Court finds that Defendant's motion should be GRANTED, Plaintiff's motion should be DENIED, and Plaintiff should take nothing by her claims here.

### FACTUAL BACKGROUND

This case arises from a special education administrative proceeding initiated by Plaintiff T.C. as next friend of her daughter, S.C., a minor child, ("Plaintiff") against the Lewisville Independent School District ("the District" or "LISD") under the IDEA, the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482. The IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special

education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

S.C. was adopted by Plaintiff T.C. from an orphanage in China when she was twelve months old. A.R. 1737. When she was three, S.C. was diagnosed with an autism spectrum disorder, "sensory issues," and a nine-month delay in social skills. A.R. 1744. S.C. attended school in the Bloomington, Minnesota Public Schools, where she was determined to be eligible for special education and related services as a child with an autism spectrum disorder and speech/language impairment. A.R. 917. In addition to her special education classroom placement, S.C. received speech therapy and occupational therapy while she was a student in Minnesota. A.R. 918.

S.C. moved with her family to Lewisville, Texas in November 2001. A.R. 1751. The LISD ARD committee accepted the evaluations and eligibility determinations that had previously been performed in Minnesota and determined that no new evaluations were needed at that time. A.R. 874, 899 and 913. Although LISD's new individualized educational program, or IEP, included a goal and objectives for fine motor skills, the District determined that instruction would no longer be provided by an occupational therapist, as in Minnesota, and S.C.'s speech services were also reduced. A.R. 899-915. The LISD Admissions Review and Dismissal, or ARD, committee also recommended extended school year services during the summer of 2002 to continue social skills and provide consistency in S.C.'s daily routines. A.R. 910-911. S.C. remained enrolled in LISD from 2002 until 2003 and continued to receive special education and related services. A.R. 969-971.

Then, after LISD conducted a "Full and Individual Evaluation" ("FIE") in February 2004, the District determined that S.C. no longer met the eligibility criteria under either autism or speech impairment and she was dismissed from special education and related services in February 2004. A.R. 868-897.

Although Plaintiff objected to this decision and reports that S.C. continued to have emotional and other problems (*see* Dkt. 55 at 7), S.C. continued in a "regular" classroom from 2004 until October 2007 when she was hospitalized and diagnosed with major depressive disorder-recurrent, psychosis, ADHD, and bipolar-rule out. A.R. 1012.

In February 2008, S.C. was privately evaluated by Michelle Lurie, Psy.D. A.R. 760. Dr. Lurie diagnosed S.C. with attention-deficit hyperactivity disorder, combined type and noted speech articulation problems ("w/r"), anxiety disorder, reactive attachment disorder, disorder of written expression, and sensory integration dysfunction. A.R. 760-773. Dr. Lurie found that S.C.'s "performance was within normal limits on measures of social perception" and that she did not evidence an autism spectrum disorder. A.R. 769-770. Dr. Lurie recommended that S.C. be qualified for special education services under OHI, speech impaired, and learning disabled, and that she receive instruction in a 1:1 or small group setting in a "slower-paced" classroom, with assistance with organizational and study skills. A.R. 774-775.

The District was provided with Dr. Lurie's evaluation and subsequently performed another FIE of S.C. in March 2008. A.R. 855-859, 989-1020. Before and during the District's evaluation in the spring of 2008, S.C. was hospitalized twice for psychiatric and behavioral issues. A.R. 1012.

In September 2008, at the beginning of S.C.'s fifth grade year, the District determined that S.C. was eligible for Section 504 accommodations based on Dr. Lurie's diagnoses of ADHD, anxiety disorder, RAD, and sensory integration dysfunction and developed a plan for her accordingly. A.R. 779. S.C. completed fifth and sixth grades under the supports provided in her Section 504 plan. A.R. 2272-2273.

In the fall of 2010, S.C. was hospitalized again and diagnosed with major depressive disorder, trichotillomania, and parent/child relational problems. A.R. 1303. After several changes in S.C.'s behavior were observed (including late or missing assignments and cutting herself) by District employees, in October 2010, the District conducted another Section 504 meeting to re-evaluate her Section 504 plan. A.R. 1022-1027, 2125. As a result, the Section 504 committee developed a new Behavior Intervention Plan ("BIP") and also referred S.C. for another FIE to determine whether she was eligible for special education services. *Id.* The District evaluated S.C. in January 2011 and prepared an FIE and IEP accordingly. A.R. 1029-1062.

After the January 2011 evaluation, although some emotional, attention and other issues were observed and recommendations were made about how to teachers should interact with S.C. and handle S.C.'s self-harming behavior, the District determined that S.C. did not demonstrate a need for specially designed instruction. A.R. 1047-1048, 2297-2298, 2300, 2316. S.C. continued under a 504 plan, but the District found that she did not qualify for special education or related services. *Id.* The FIE noted, however, that "[i]n the event that [S.C.'s] condition deteriorates and begins to have a significant impact on her educational, behavioral, and/or social performance in the school

setting, then a review of evaluation and progress by special education should again be requested." A.R. 1047.

During the summer of 2011, when school was not in session, S.C. attempted suicide and was hospitalized. A.R. 1097. According to the record, in or around August 2011, after the District received information about the suicide attempt, the District convened an ARD committee meeting to consider whether she met eligibility for special education and related services. A.R. 2164-2170. At this time, the District determined that S.C. would benefit from special education services to assist in transitioning from the hospital back to school. A.R. 1069.

On September 26, 2011, the ARD committee determined that S.C. met the eligibility requirements under the IDEA for special education and related services as a student with an emotional disturbance (ED), as well as OHI for S.C.'s ADHD, pending her doctor's approval of this eligibility. A.R. 1077, 1098, 1100.

Plaintiff declined the placement that LISD offered for her daughter, informed the ARD committee of her intent to place S.C. at a private school, Vanguard Preparatory School, upon her hospital discharge, and requested that the ARD committee reimburse her the costs associated with her placement at Vanguard. A.R. 1099, 1101, 2179-2180. LISD declined to approve the placement at Vanguard. A.R. 1105-1107.

While S.C. was at Vanguard, in November 2011, Drs. Ruth Aspy and Barry Grossman of the Ziggurat Group (a group with expertise in the field of autism spectrum disorders hired by Plaintiff) completed an Independent Educational Evaluation ("IEE") of S.C. A.R. 1109-1140. The IEE

showed that S.C. "displayed characteristics of a student with a significant disability," noting that "[s]pecifically she displays significant symptoms of depression and anxiety," and recommended that the ARD committee should consider eligibility for S.C. under the category of emotional disturbance. A.R. 1134-1135. They also recommended that a comprehensive evaluation for an autism spectrum disorder be conducted and suggested further evaluations in the area of speech, especially pragmatic language, as well as an occupational therapy evaluation. A.R. 1134. The IEE also recommended that Plaintiff consult with S.C.'s physician regarding a combination of drug therapy and specialized cognitive-behavior counseling. *Id.*

Plaintiff filed her request for a due process hearing on January 26, 2012. A.R. 26-34. Plaintiff argued that the District violated the IDEA by failing to identify S.C. as a student needing special education and by failing to provide her with a free appropriate public education. A.R. 27.

On or about March 2, 2012, while the due process proceeding was pending and S.C. remained at Vanguard, an ARD meeting was held at Lewisville ISD to review the findings in the Ziggurat Group's IEE. A.R. 1142. The ARD committee maintained S.C.'s eligibility for services for emotional disturbance and proposed further evaluations for autism, pragmatic language, occupational therapy, as well as an evaluation of S.C.'s math skills. A.R. 1168. The ARD committee recommended that S.C. be placed in a general education setting with inclusion support and adult supervision at all times and that there be specific training for S.C.'s teachers to address her need for adult supervision. A.R. 1169. The committee further recommended the assignment of a trusted adult to S.C. and the assistance of general education and special education counselors to

assist with her emotional needs. A.R. 1169. The District substantially agreed with the conclusions of the IEE with respect to S.C.'s eligibility, but concluded that it could implement the recommendations of the IEE at LISD. A.R. 1168-1169. Plaintiff disagreed and S.C. remained at Vanguard. *Id.*

Plaintiff then had the Ziggurat Group conduct an independent autism evaluation of her daughter, and in June, 2012, Drs. Aspy and Grossman found that S.C. met the criteria for an individual with high-functioning autism together with eligibility with an emotionally disturbance. A.R. 561-607; 585.[1] They also recommended eligibility for S.C. as speech impaired, due to a significant pragmatic language disorder. A.R. 586.

The due process hearing was conducted from October 30 to November 1, 2012. A.R. 1. On January 7, 2013, the Special Education Hearing Officer ("SEHO") rendered his decision in favor of LISD finding that it had not violated the IDEA in its provision of educational services to S.C. A.R. 1-11. The SEHO found that the credible testimony of the witnesses called by the District demonstrated that the LISD "provided – and is offering to provide – an appropriate education program for the student." A.R. 10. The SEHO further found that the witnesses called by Plaintiff "failed to establish credibly" that the private placement made by Plaintiff in Vanguard was

---

[1]The Court notes that some portions of the copy of the Ziggurat Group's June 2012 Autism Spectrum Disorder Evaluation that are in the administrative record forwarded to the Court are dark and not always legible. *See* A.R. 561-607. The copy attached by Plaintiff to her motion is equally dark and difficult to read. *See* Dkt. 55-4 at 1-47. Since there is no dispute as to the content of the evaluation (although there is significant dispute regarding the opinions rendered therein), the Court relies on the parties' arguments regarding the evaluation and the portions that are decipherable in its evaluation of Plaintiff's claims.

appropriate. *Id.*

According to the record before the Court, since Plaintiff's removal of S.C. from LISD in 2011, Plaintiff has not provided consent for initial placement into special education services at LISD nor has she provided consent for any additional evaluations by the District. The District has not performed its autism evaluation, and S.C. is no longer enrolled in LISD.

In this case, Plaintiff asks the Court to review the SEHO's decision under the IDEA. Specifically, in her complaint, Plaintiff argues that the SEHO erred procedurally by limiting the number of pages of documentary evidence that he would allow Plaintiff to submit to 500; that the SEHO erred procedurally by not allowing Plaintiff to present evidence at the due process hearing regarding the application of the IDEA's statutory exceptions to Texas' one-year statute of limitations and by dismissing Plaintiff's claims for IDEA compensatory remedies based on events occurring earlier than one year prior to the filing of the request for the due process hearing; that the SEHO erred, as a matter of fact and law, in finding the District provided a free appropriate public education to S.C.; that the SEHO erred, as a matter of fact and law, in finding that the "witnesses called by Petitioner failed to establish credibly that the private placement made by Petitioner is appropriate;" that the SEHO erred, as a matter of fact, in finding that the "District's evaluation is more substantial, thorough, and credible than those of the Ziggurat Group;" that the SEHO erred, as a matter of fact and law, in denying reimbursement to Plaintiff for her private placement of S.C. at the Vanguard Preparatory School and for the cost of providing private therapies to S.C. when those therapies or

services should have been provided by LISD as related services. *See* Dkt. 10 at ¶43-51.[2]

Both sides have filed motions for judgment on the record.

In its motion, Defendant makes the following arguments: (1) the SEHO did not err in limiting the number of pages of documentary evidence in the underlying due process hearing; (2) the SEHO did not err in ruling prior to the commencement of the due process hearing that the one-year statute of limitations applied to Plaintiff's claims; (3) the SEHO did not err in ruling that the District provided (and is offering to provide) a free appropriate public education for S.C.; (4) the SEHO did not err in finding that the District's evaluation of S.C. was more substantial, thorough, and credible than the Ziggurat Group's evaluations of S.C.; and (5) the SEHO did not err in denying Plaintiff reimbursement for Student's private therapies and private placement. *See* Dkt. 54.

In her cross-motion, Plaintiff makes the following arguments: (1) the Court should not defer to the SEHO's findings; (2) the evidence and testimony in this case show that S.C. was denied a free appropriate public education by LISD because LISD failed its "child-find" obligations and because the September 2011 IEP was not reasonably calculated to provide S.C. with a free appropriate public education; and (3) Plaintiff should be reimbursed for the cost of privately placing S.C. at the Vanguard Preparatory School. *See* Dkt. 55.

The motions are fully briefed, the parties have submitted the additional evidence permitted by the Court, and the issues are ripe for disposition on the record.

---

[2]In addition to the appeal of the decision under the IDEA, Plaintiff's complaint also asserts claims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act (the "ADA"). The Court previously dismissed those claims for failure to state a claim, leaving only the IDEA claims for resolution. *See* Dkts. 25 & 32.

States receiving federal assistance under the IDEA must: (1) provide a "free appropriate public education" or "FAPE" to each disabled child within its boundaries, and (2) ensure that such education is in the "least restrictive environment" ("LRE") possible. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir.1997); 20 U.S.C. § 1412(1), (5). The FAPE provided must be developed to each disabled child's needs through an "individual educational program" ("IEP"), which is a written statement prepared at a meeting attended by a school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child. *Michael F.*, 118 F.3d at 247; *see* 20 U.S.C. § 1414(d). In Texas, the committee responsible for preparing an IEP is known as an Admissions, Review, and Dismissal ("ARD") committee.

The role of the judiciary under the IDEA is limited, leaving the choice of educational policies and methods in the hands of state and local school officials. *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003), *citing Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996). The Court must reach an independent decision based on a preponderance of the evidence. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). However, this requirement "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed.2d 690 (1982). Instead,

"due weight" is to be given to the hearing officer's decision. *Id.* Thus, "courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Id*. at 207. A court's task therefore is not to second guess a school district's decisions or impose its own plans for the education of disabled students; rather, it is the narrow one of determining whether the school district complied with the IDEA. *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003); *see also Daniel R.R. v. State Bd. of Edu.*, 874 F.2d 1036, 1048 (5th Cir. 1989).[3]

The party seeking relief under the IDEA bears the burden of proof. *Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 535-537 (2005). The United States Supreme Court has explained the burdens – as to IEP challenges – as follows:

> The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief. In this case, that party is Brian, as represented by his parents. But the rule applies with equal effect to school districts. If they seek to challenge an IEP, they will in turn bear the burden of persuasion before an ALJ.

*Schaffer*, 546 U.S. at 62, 126 S. Ct. at 537; *see also Michael F.*, 118 F.3d at 252 ("a party attacking the appropriateness of an IEP established by a local educational agency bears the burden of showing

---

[3]The Court notes that Plaintiff's briefing lists as an issue in this case "What 'due deference' is owed to the Hearing Officer's Decision in this case?" and argues that the SEHO's decision deserves *no* deference from this Court. *See* Dkt. 55 at 21-23. The Court declines to make any factual findings on this issue. The deference to which the SEHO's decision is entitled is a matter of law for the Court, and this Court is governed by precedent.

why the IEP and the resulting placement were inappropriate under the IDEA.").  The burdens of proof at the district court level are identical to those at the administrative level.  *Richardson ISD v. Michael Z.,* 580 F.3d 286, 292 n. 4 (5th Cir. 2009) ("[A]t the district court level, as at the administrative level, the party challenging the IEP bears the burden of showing that the IEP and the resulting placement are inappropriate under the IDEA.").  The IDEA also creates a presumption in favor of the education plan proposed by the school district, and places the burden of proof on the party challenging it.  *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 248 (5th Cir. 1997); *Alamo Heights Indep. Sch. Dist. v. State Bd. of Edu.*, 790 F.2d 1153, 1158 (5th Cir. 1986); *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 467 (5th Cir. 1995); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 132 (5th Cir. 1993).  "Accordingly, in IDEA proceedings, summary judgment is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed."  *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, __ F. 3d __, 2016 WL 157998, at *2 (5th Cir. Jan. 13, 2016) (internal citations omitted).

Although the IDEA sets forth specific burdens of proof as to proceedings under it, the Court holds both parties in this case to the procedural standards required in all summary judgment proceedings.  As such, the parties are expected to cite to specific facts in the record.  *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  The citations to evidence must be specific, as the district court is not required to "scour the record" to

determine the merits of the parties' arguments. E.D. TEX. LOCAL R. CV-56(d); *See R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist*., 703 F.3d 801, 811 (5th Cir. 2012) (in case under the IDEA it is not the court's duty to sift through the record for evidence in support of position where there are no citations to the record). *See also Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (Rule 56 does not require court to rifle through the record in search of evidence to support a party's opposition to summary judgment). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent evidence. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). The Court has therefore based its analysis primarily on those portions of the record specifically cited by the parties. As to any arguments regarding the parties' characterization of the record, the Court relies on the specific cites to the record in making its findings. The record speaks for itself, and both sides are entitled to advocate as to how the record supports their respective positions.

Keeping in mind those mandates, the Court proceeds with the parties' arguments.

## ANALYSIS

### Page Limitation

Plaintiff's complaint asserts that the SEHO "erred procedurally" in limiting the parties, absent leave from the SEHO, to no more than 500 pages of exhibits per side at the due process hearing. In its motion, Defendant argues that the SEHO did not err in setting the page limitation and cites to portions of the Texas Administrative Code giving special education hearing officers broad discretion in overseeing due process hearings. *See* 19 TEX. ADMIN. CODE § 89.1170(e); §§

89.1180(d)(4), (e)(6). As noted by Defendant in its briefing, Plaintiff has not briefed this issue in her Motion for Judgment on the Administrative Record or in response to the District's Motion for Judgment on the Administrative Record. And Plaintiff has not pointed to anything in the record to show that the SEHO erred by issuing a Prehearing Order limiting exhibits to no more than 500 pages per side, nor is there anything before the Court to show that Plaintiff was prevented from offering any additional exhibits exceeding the page limitation at the due process hearing.[4] The District's Motion for Judgment should be granted on this point, and Plaintiff should take nothing by her claim regarding the page limitations imposed by the SEHO.[5]

## Statute of Limitations

The Court next turns to the application of the statute of limitations in this case. After considering Plaintiff's request to address relief reaching back to 2002, the SEHO ultimately applied the one-year statute of limitations, thereby dismissing all claims arising before January 26, 2011. A.R. 2, 294.[6] In her complaint, Plaintiff claims that the SEHO erred procedurally by not allowing Plaintiff to present evidence at the due process hearing with respect to the application of IDEA

---

[4]Indeed, the SEHO's Final Decision notes "[c]ounsel were invited to present argument supporting a need for more pages of exhibits. Counsel did not." A.R. 2. *See also* A.R. 1619-1620.

[5]Nonetheless, the Court notes that the administrative record in this case (including the transcript of the due process hearing) is substantial and more than 2,300 pages long.

[6]Although Plaintiff takes issue with Defendant's characterization of the SEHO's order, arguing no specific time frame was set forth, the SEHO's final decision clearly states that all claims for relief "prior to one year of the filing for request for hearing were dismissed" by that order. A.R. 16. The record is clear that the SEHO applied the statute of limitations to bar all claims prior to January 26, 2011.

statutory exceptions to Texas' one-year statute of limitations and and substantively erred by dismissing Plaintiff' claims for IDEA compensatory remedies based on events occurring earlier than one year prior to the filing of the request for the due process hearing. In its motion, Defendant argues that the SEHO did not err in finding that the one-year statute of limitations applied to Plaintiff's claims.[7]

The Court first addresses whether there was any procedural error in the SEHO's application of the statute of limitations. Plaintiff argues that she was not given the full opportunity to brief or offer evidence regarding the matter of the statute of limitations to the SEHO and that the Court should allow her to make further and complete evidentiary-based arguments with respect to the issue of exceptions to the Texas one-year statute of limitations. Plaintiff claims that, although the SEHO's order states that he considered "Respondent's motion, the response of Petitioner, and the argument of counsel," the SEHO's ruling was based instead on short letter briefing and did not offer her a sufficient opportunity to be heard on the issue. A.R. 294. This, Plaintiff claims, deprived her of her right to present evidence and confront, cross-examine, and compel the attendance of witnesses as permitted under the TEX. ADMIN. CODE § 89.1185(d) and 34 C.F.R. § 300.512(a)(2). The record does not support Plaintiff's position.

---

[7]In its reply and other briefing, Defendant also argues that Plaintiff has waived certain arguments not fully briefed in her response and filed a motion seeking to strike certain late-raised arguments regarding the statute of limitations. Because the Court finds that Plaintiff has failed to show how her pre-2011 claims are not barred by the statute of limitations, it need not reach the issue of whether she waived any arguments. The Court notes that, even if the failure to adequately brief the matter does not constitute waiver, it weighs against her in sustaining her burden of proof.

Although Plaintiff complains that she was only permitted to submit a one-page letter on the issue of limitations, Plaintiff's counsel lodged no objection to the submission of letter briefing when it was ordered by the SEHO; the SEHO also told counsel "[y]ou can write a longer letter than that." A.R. 1526, 1532. That the SEHO ruled on the issue of statute of limitations without a formal motions practice – indeed he noted on the record when directing the filing of the letter brief that he preferred informal discussion of issues rather than paper in order to save time and money for the client (*see* A.R. 1533)[8] – did not deprive Plaintiff of an opportunity to be heard on the issue of limitations. Nor did the SEHO's statement that he would not change his mind on his limitations rulings. Nothing in the record indicates that Plaintiff was prevented from presenting her statute of limitations arguments to the SEHO.

The Court has also reviewed Plaintiff's letter briefing submitted to the SEHO on the issue of limitations and any exceptions thereto, as well as an email to the SEHO from Plaintiff's counsel objecting to the application of the statute of limitations to her claims. A.R. 533-534. Both the letter and email take issue with the manner in which the SEHO chose to handle the briefing and his consideration of the evidence, but nothing in the administrative record submitted to the Court states specifically how the facts and evidence of this case warrant the application of any exceptions to the statute of limitations. Although Plaintiff's counsel argued at the beginning of the due process hearing that the rules did not support the letter briefing process, even she acknowledged that the SEHO asked for "a short letter document describing what [she] would offer." A.R. 1621. The

---

[8]Such is equally true for many of the judges sitting in this District who regularly employ letter briefing or telephonic hearing practices to conserve court and party resources.

portions of the letter in the record do not describe what would be offered.[9]

Moreover, at the conclusion of the hearing, the SEHO allowed Plaintiff to make an offer of proof as to the limitations issue so that, in the words of the SEHO, Plaintiff "can go to the appellate court and say, 'The Hearing Officer was wrong and a different statute of limitations should have been applied.'" A.R. 742. Plaintiff was permitted to examine witnesses, Defendant permitted to cross-examine, and Plaintiff permitted to re-direct on the statute of limitations issue. *See* A.R. 2324-2338. Plaintiff has not shown how the SEHO – who, as the Court has already noted, has discretion in how he conducts his special education hearings and who, the Court finds is entitled to manage due process hearings with efficiency – erred procedurally by not allowing Plaintiff to present evidence in her case in chief at the due process hearing with respect to the application of IDEA statutory exceptions to Texas' one-year statute of limitations. Judgment should be granted for Defendant as to Plaintiff's procedural objection, and Plaintiff should take nothing by the claim that the SEHO committed a procedural error in making his statute of limitations ruling.

Now the Court turns to whether the SEHO erred by finding that the statute of limitations barred any claims arising before January 26, 2011 and dismissing those claims. Defendant argues that Plaintiff did not establish an exception to the one-year statute of limitations. The Court agrees.

---

[9]The Court notes that the second page of the letter is not part of the administrative record. Although Plaintiff has noted that the second page of the letter is missing from the administrative record, the Court cannot identify any portion of the record in which Plaintiff has attempted to supplement the record herein to include it. It is a letter authored by Plaintiff's counsel and thus is presumably in counsel's possession.

In Texas, parents seeking relief under the IDEA must request a due process hearing within one year of the date the complainant knew or should have known about the alleged action that serves as the basis for the request. 19 TEX. ADMIN. CODE § 89.1151(c); *see also* 20 U.S.C. § 1415(f)(3)(C) (establishing a two-year statute of limitations unless a state statute provides otherwise). The one-year statute does not apply, however, when a parent is prevented from filing the due process complaint because (1) the school district made specific misrepresentations that it had resolved the problem forming the basis of the complaint; or (2) the school district withheld information from the parent that was required under the IDEA be provided to the parent. 19 TEX. ADMIN. CODE § 89.1151(d); *see also* 20 U.S.C. § 1415(f)(3)(D)(I)-(ii).

In this case, it is undisputed that Plaintiff filed her request for a due process hearing on January 26, 2012. A.R. 26. Therefore, unless an exception to the statute of limitations applies, any claims for acts and omissions Plaintiff knew or should have known about prior to January 26, 2011 are time-barred.[10]

In response to Defendant's motion, Plaintiff does not state how each of these exceptions apply or what facts she alleges to support them. Instead, she argues that she should be given the opportunity "to make further and complete evidentiary-based arguments with respect to the issue of exceptions to the Texas one-year statute of limitations." Dkt. 57 at 20. In her motion, Plaintiff

---

[10]The Court notes that Plaintiff argues in her surreply to Defendant's motion that the statute of limitations did not begin to run until August of 2011 when her daughter attempted suicide and she "became fully aware of the severity of her daughter's emotional disturbance." Dkt. 62 at 8. The Court does not see how this argument substantively affects Plaintiff's position, and Plaintiff has not sustained her burden in showing that another timeframe is relevant here.

argues that "Plaintiff was therefore foreclosed from presenting its evidence that would tend to show that IDEA exceptions to the statute of limitations should be applied." Dkt. 55 at 21. Plaintiff provides no other argument or explanation as to what exceptions should apply, what any evidence would show, or how her offer of proof preserved the presentation of such evidence.

The SEHO permitted Plaintiff to make an offer of proof regarding the statute of limitations. Plaintiff has not cited to that portion of the administrative record in support of her limitations argument or to show how that testimony offered would show either exception. Nonetheless (and although it is not the Court's burden to do so), the Court has reviewed the portion of the administrative record containing Plaintiff's offer of proof to see whether it clarifies the statute of limitations exception she seeks to present.

## Specific Misrepresentations

In discussing the misrepresentation exception, this Court has noted that "not just any misrepresentation by the District will trigger the exception; rather, the misrepresentation must be such that it prevents the parent from requesting a due process hearing regarding claims that would otherwise be time-barred." *C.H. v. Northwest Indep. Sch. Dist.*, 815 F. Supp.2d 977, 984 -85 (E.D. Tex. 2011) (Schell, J.) (internal quotations and alterations omitted). Plaintiff has pointed to no evidence in the administrative or supplemental record that would support a claim that the District made a misrepresentation to her that prevented her from requesting a due process hearing.

That the District took the position that S.C. was "okay and everything was going well" and that S.C. could get special education again, as Plaintiff testified (*see* A.R. 2329-2330), does not

evidence a misrepresentation sufficient to toll the statute of limitations. That Plaintiff disagrees with the failure to evaluate S.C., despite her concerns expressed at the time, is also not enough to toll limitations. As this Court explained:

> [T]he court finds that the District's assessment of the May 2005 FIE as inconclusive about whether C.H. had a learning disability is merely the District's subjective and good-faith assessment of the test results. In hindsight, the Plaintiff might consider the District's assessment of C.H. to be wrong, but that does not rise to a specific misrepresentation triggering § 1415(f)(3)(D)(I). If inadequate assessments were sufficient to warrant application of the statutory exception, the exception would swallow the rule.

*C.H.*, 815 F. Supp.2d at 985 (internal citations and quotations omitted).

Because there is no evidence cited to in the record of specific and affirmative misrepresentations by LISD and because Plaintiff has not offered any factual allegations that would show what misrepresentations were allegedly made, this exception to the statute of limitations does not apply.

## Withholding of Information

Plaintiff has also failed to show how the other exception to the statute of limitations applies. This exception, which applies when a school district withholds information "required [under IDEA] to be provided to the parent," § 1415(f)(3)(D)(ii), "addresses the IDEA requirement that school districts provide parents with 'a copy of procedural safeguards.'" *El Paso Indep. Sch. Dist. v. Richard R.*, 567, F. Supp.2d 918, 943 (W.D. Tex. 2008). "The rationale for the exception is that a local education agency's withholding of procedural safeguards would act to prevent parents from requesting a due process hearing ... until such a time as an intervening source apprised them of their

rights." *C.H.*, 815 F. Supp.2d at 986 (citing *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp.2d 918, 945 (W.D. Tex. 2008) (internal citations omitted).

Defendant argues that the administrative record conclusively establishes that Plaintiff received the procedural safeguards in February 2004, May 2008, November 2010, August 2011, and September 2011. *See* A.R. 1019, 1055, 1074, 1846-1848. Although testimony was offered as part of Plaintiff's offer of proof that Plaintiff did not receive a document called "Prior Written Notice" (*see* A.R. 2337), Plaintiff has not shown what this document was or how this would trigger any withholding exception.

The Court notes that, in her briefing on the administrative record, Plaintiff also argues that the District withheld information from S.C.'s teachers and those developing her 504 plan about S.C.'s medication. *See* Dkt. 57 at 23 (citing Dkt. 55 at ¶29). Such, even had Plaintiff thoroughly cited the administrative record on this issue, does not trigger the withholding exception, which pertains to the withholding of information from *parents*, not teachers or District staff. There is simply no evidence before the Court that the withholding exception applies.

For these reasons, the Court finds that the SEHO did not err in his decision to apply the one-year statute of limitations. All claims arising before January 26, 2011 are barred by the statute of limitations. Judgment should be granted for Defendant on this issue.

**FAPE**

The Court now turns to whether the SEHO erred in ruling that the District provided and is offering to provide a free appropriate public education for S.C. Under the IDEA, public school

districts in states receiving federal funds must provide each child with a FAPE. 20 U.S.C. § 1412(a)(1). To establish that a district failed to provide a student with a FAPE, a plaintiff must first demonstrate that: (i) the district failed to comply with the procedures set forth in the IDEA; or (ii) the individualized education program (IEP) developed by the district through the IDEA's procedures was not reasonably calculated to enable the student to receive educational benefits. *Bd. of Edu. v. Rowley*, 458 U.S. 176, 207-08, 102 S. Ct. 3034, 3051 (1982). Even when a procedural violation is proven to have been committed, there is no *per se* violation of the IDEA; instead, liability only arises if the procedural deficiency either: (i) impeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or (iii) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii); *see also Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-526, 127 S. Ct. 1994, 2001 (2007); *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir. 2003).

Plaintiff argues that the great weight of the evidence shows that the District did not provide S.C. with a FAPE. Specifically, Plaintiff argues that LISD failed its "child-find" obligations by not identifying and evaluating a student who was reasonably suspected of having a disability. Plaintiff also argues that the IEP developed by the District in September 2011 was not reasonably calculated to provide S.C. with a FAPE.

Defendant argues that the District timely and appropriately assessed S.C. in all areas related to any suspected disabilities. Defendant further argues that, once the need for specially designed instruction manifested, Defendant found S.C. eligible for special education and related services and

provided her with an appropriate IEP.

*Child-Find*

The Court first addresses Plaintiff's argument that the District failed its child-find obligations. The IDEA's child-find provision applicable to the time periods at issue here provides: "All children with disabilities residing in [a] State ... who are in need of special education and related services, are [to be] identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). *See also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245, 129 S. Ct. 2484, 2495, 174 L. Ed. 2d 168 (2009) (child-find requirement ensures students receive special-education services).

Plaintiff argues that when S.C. enrolled in the District in 2001, she still displayed the manifestations of autism spectrum disorder and speech delay identified in Minnesota and that the District's 2004 dismissal of her from special education services was a violation of IDEA and Section 504. Plaintiff also argues that the District failed to find that S.C. met the criteria for eligibility for an emotional disturbance even though she satisfied several criteria. The majority of Plaintiff's factual arguments regarding the District's child-find obligations deal with the District's actions prior to 2011.

The Court agrees with Defendant that, given the statute of limitations, the analysis here is limited to whether the District met its child-find obligations between January 26, 2011 and January 26, 2012. Any allegations – of which there are many – regarding the District's actions prior to the January 2011 assessment are barred by the statute of limitations.

The Court further finds that, to the extent not otherwise barred by the statute of limitations, Plaintiff's briefing as to her child-find argument lacks sufficient cites to the administrative record for the Court to determine that a preponderance of the evidence supports her claims. *See, e.g,* Dkt. 44 at 24-25.[11] The Court is not required to scour the record or the briefing to determine how a certain argument is supported by the record. It is Plaintiff's burden to show this. She has not sufficiently done so as to her child-find argument. Defendant, on the other hand, has consistently provided voluminous record cites to show how it met its child-find obligations since S.C.'s enrollment in the District. *See, e.g.*, Dkt. 56 at 12-17.

No child-find violation has been shown. The "IDEA does not penalize school districts for not timely evaluating students who do not *need* special education." *D.G. v. Flour Bluff Indep. Sch. Dist.*, 481 F. App'x 887, 893 (5th Cir. 2012) (emphasis in original). According to the record in this case, once enrolled in LISD, S.C. was evaluated on several occasions and she was not found to need special education until 2011. *See, e.g.*, A.R. 963-987, 989-1020, 1029-1053, 1077. In both February 2004, and in May 2008, S.C.'s ARD committee found that S.C. did not meet the eligibility criteria for special education under the IDEA. A.R. 981-982, 1014-1015. Unlike the student in the *Jana K* case cited by Plaintiff where there was no evaluation of the student whatsoever, here, S.C. was evaluated, albeit with results with which her mother disagreed. *See Jana K. ex rel. Tim K. v.*

---

[11]The Court notes that Plaintiff's reply brief cites back to the factual background portion of her motion which does cite – although not always consistently – to portions of the administrative record. *See* Dkt. 59 at 11-16 (citing Dkt. 55 at various paragraphs). Such a practice does not facilitate the Court's review of a very voluminous record. In any event, the Court has reviewed the record cites provided.

*Annville Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 603 (M.D. Pa. 2014) ("the mosaic of evidence in this case clearly portrays a student who was in need of a special education evaluation" and the school district's failure to evaluate the student for special education was a child-find violation and deprived her of the opportunity to benefit from an IEP). Contrary to Plaintiff's indication that S.C.'s eligibility for special education services was found to be "inconclusive" in the 2008 evaluation (*see e.g.*, Dkt. 55 at 11 and Dkt. 57 at 22), the administrative record regarding this evaluation contains the finding that S.C. "does not qualify for special educational services because of her current success in the academic setting and that her emotional of [sic] ADHD characteristics are not significantly impacting her educational performance at this time." A.R. 1015.[12] Even if the Court were to find that this evaluation were not time-barred, the record does not support Plaintiff's position.

And, although Plaintiff disagrees with the District's findings and in particular the number of years it took for S.C. to be found qualified for special education services, she has not shown how the District failed to identify, locate, and evaluate S.C. in violation of the child-find provision. "Nothing in the Act requires that children be classified by their disability so long as each child who has a disability that is listed in § 300.8 and who, by reason of that disability, needs special education and related services is regarded as a child with a disability under Part B of the Act." 34 C.F.R. § 300.111(d). Therefore, even if she fell on the autism diagnostic spectrum – as Plaintiff maintains –

---

[12]The Court notes that Ms. Martin characterized the need for special education services as "inconclusive" in the January 2011 FIE in her discussion of some of S.C.'s social difficulties and in noting that, should her condition deteriorate, it should be re-evaluated. *See* A.R. 1047. Nonetheless, the ultimate finding in the FIE was not inconclusive as to the finding that S.C. did not meet diagnostic criteria for a learning disability or an emotional disturbance. *See* A.R. 1048.

the Court cannot find that there was a violation of child-find if it was determined that she did not need special education and related services. The administrative record contains numerous evaluations of S.C. over the years finding that she did not need special education services; Plaintiff has not convincingly shown, through evidence in the record, what special education and related services S.C. needed but did not receive.

As to the January 2011 evaluation, Defendant has cited to evidence to show that, although S.C. appeared emotional and anxious and had difficulty concentrating, S.C. was functioning with minimal problems at school, was passing all of her classes, and was able to maintain emotional control in the classroom setting and made appropriate behavioral and peer choices. *See* A.R. 1047. Dkt. 46-1, ¶26, 40-41. While S.C. continued under her 504 plan, the District found that she did not qualify for special education or related services and that none of the emotional indicators that observed by the District during the 2011 FIE were negatively impacting S.C.'s behavioral, social, or emotional functioning at school. A.R. 1047-1048, 2297-2298, 2300, 2316; Dkt. 46-1, ¶41. The evidence in the record further shows that once the District learned of S.C.'s suicide attempt,[13] it determined that her condition had deteriorated, convened an ARD committee meeting, and determined that S.C. would benefit from special education services to assist her in transitioning back to school. A.R. 1069; 2164-2171. This cannot be said to be a violation of the District's child-find obligations; to the contrary, it strikes the Court as a pro-active measure to comply with the District's

---

[13]Plaintiff argues that it was not the suicide attempt but rather her notification that S.C. would not return to the District that motivated the ARD meeting. Even if this were supported by the record, it does not alter the Court's analysis here since the District has cited to evidence to show that S.C.'s deteriorating condition warranted a revised IEP.

duties to identify and evaluate those needing special services.

As noted by Plaintiff (*see* Dkt. 62 at 14), a procedural child-find violation "is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3rd Cir. 2010). Plaintiff has not shown by a preponderance of the evidence that S.C. was deprived of an educational opportunity, that she was deprived of her participation rights or that S.C. was deprived of educational benefits or effective educational supports. Plaintiff has not shown how the District failed to satisfy its child-find obligations, and judgment should be granted in the District's favor as to this allegation.

## September 2011 IEP

Now the Court turns to the issue of whether the September 2011 IEP was reasonably calculated to provide S.C. with a FAPE. Plaintiff argues that the District failed by not qualifying S.C. for special education until *after* Plaintiff notified the District in August 2011 that she intended to privately place her daughter at Vanguard and requested reimbursement from the District. Plaintiff complains that, because the qualification for services was determined when S.C. was not in school, there was essentially no change in the classroom to warrant the development of the IEP and the initial decision not to qualify S.C. for services was therefore flawed. Plaintiff further argues that the District also failed to provide a FAPE by recommending only one possible placement for S.C. – a BIC class, a self-contained class in which S.C. would spend the entire school day. A.R. 1095.

In determining whether an IEP is appropriate, the Fifth Circuit has outlined four factors to consider: (1) whether the program is individualized on the basis of the student's assessment and performance; (2) whether the program is administered in the least restrictive environment; (3) whether the services are provided in a coordinated and collaborative manner by the key stakeholders; and (4) whether positive academic and non-academic benefits are demonstrated. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 253 (5th Cir.1997).

In other words, an IEP must be geared to provide "meaningful" educational benefit. *Rowley*, 458 U.S. at 192; *see also Michael F.*, 118 F.3d at 248. The inquiry does not turn, however, upon whether the District provided S.C. with an education designed to maximize her potential. *Michael F.*, 118 F.3d at 247-48. As the IDEA guarantees a "basic floor or opportunity," the District is only bound to provide "access to specialized instruction and related services which are individually designed to provide educational benefit." *Rowley*, 458 U.S. at 201. "Nevertheless, the educational benefit to which the [IDEA] refers and to which an IEP must be geared cannot be a mere modicum or de minimis; rather, an IEP must be 'likely to produce progress, not regression or trivial educational advancement.'" *Michael F.*, 118 F.3d at 248 (footnotes omitted) (quoting *Bd. of Educ. of the E. Windsor Reg'l Sch. Dist. v. Diamond*, 808 F.2d 987, 991 (3d Cir. 1986)). Critically, in providing an IEP, school districts "are not required to cure or erase the differences between disabled and non-disabled children, but only to develop an individualized program capable of providing an educational benefit to the child." *Klein Indep. Sch. Dist. v. Hovem,* 745 F. Supp.2d 700, 708 (S.D. Tex. 2010). And "while parties may disagree over the diagnosis of a student's disability, the IDEA

charges the school with developing an appropriate education, *not with coming up with a proper label with which to describe [the child's]...disabilities.*"  *C.H. v. Northwest Indep. Sch. Dist.*, 815 F. Supp.2d 977, 985 (E.D. Tex. 2011) (*citing Klein Indep. Sch. Dist. v. Hovem*, 745 F. Supp.2d 700 (S.D. Tex. 2010)) (emphasis added); *see also G.I. v. Lewisville Indep. Sch. Dist.*, 2013 WL 4523581, 10 (E.D. Tex. 2013) ("Various courts throughout the nation have also held that school districts are not required to classify a student into a particular category, or affix that student with a particular label.  Instead, the IDEA only requires that the school district provide an appropriate education."); 20 U.S.C. § 1412(a)(3)(B) ("Nothing in this chapter requires that children be classified by their disability so long as each child who has a disability listed in section 1401 of this title and who, by reason of that disability, needs special education and related services is regarded as a child with a disability under this subchapter.").

The Court briefly examines Plaintiff's claims that the September 2011 IEP was patently insufficient since nothing had changed about S.C.'s classroom conditions.  Plaintiff argues that it would be impossible to develop an IEP for S.C. because she was hospitalized at the time and the District could not have conducted a Functional Behavioral Assessment ("FBA") of S.C. when she was not in the classroom.

Although the District concedes that no additional classroom observation was conducted, Defendant has cited to evidence in the record to support its position that the September 2011 FBA was based on the 2011 FIE (an evaluation which noted her emotional and behavioral difficulties) and that S.C.'s suicide attempt demonstrated a need for more supervision and intensive intervention.

A.R. 1069 ( "[i]t appears as though [S.C.] would now benefit from the support of special education services to assist her in the transition from the hospital setting to the school setting."); A.R. 1081, 2171. There is no question from the Court's review of the record that the District had previously evaluated S.C. and collected significant data about her to warrant the development of an IEP after the report of a suicide attempt requiring hospitalization.

The Court finds that the District based its decision to qualify S.C. for special education eligibility in September 2011 on complete data and that the IEP based on observations, record review, and data analysis was sufficient. *R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 813 (5th Cir. 2012) ("The regulations suggest—but do not require—that an FBA be used to develop a BIP."). Given the facts of this case and the District's continued evaluation of S.C. over the years, the Court will not find the IEP patently insufficient based on Plaintiff's complaint that it was not the result of any additional in-school assessments or observations.[14]

Next, the Court turns to Plaintiff's complaint that the IEP developed for S.C. was not appropriate and examines the record *de novo* under the four *Michael F.* factors listed above. Because Plaintiff has challenged the District's IEP, she bears the burden of proof in showing it was not appropriate. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 248 (5th Cir. 1997); *Alamo Heights Indep. Sch. Dist. v. State Bd. of Edu.*, 790 F.2d 1153, 1158 (5th Cir. 1986); *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 467 (5th Cir. 1995); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 132 (5th Cir. 1993). Given the application of the statute of limitations (although

---

[14]Indeed, S.C. never returned to school at LISD after the 2011 suicide attempt, so it is not clear to the Court *how* the District could have conducted further classroom evaluations.

some background facts are useful in giving context to the parties' arguments), the Court addresses the appropriateness of the IEP only between January 2011 through January 2012.

*Individualized IEP Based on Student's Assessment and Performance*

Here, Defendant has cited to portions of the administrative record to show that S.C.'s IEP was individualized on the basis of S.C.'s assessment and performance as it was based on S.C's most recent FIE and parent report, in addition to S.C.'s present levels of academic achievement and functional performance as measured by school records, teacher observation, data collection, and criterion-referenced assessment. *See* A.R. 1029-1053, 1069-1072, 1074-1103, 1142-1178. The ARD committee used data from its FBA and developed a BIP. *See* A.R. 1081-1083, 1098. The ARD committee also developed counseling goals and objectives, recommended direct counseling services to occur forty-five minutes a week, and determined necessary accommodations for S.C. *See* A.R. 1089-1090, 1095-1099.

Although Plaintiff disagrees with the recommended plan, Plaintiff has not cited to any portions of the record, nor has Plaintiff cited to any legal authority, to show how the IEP was not individualized as to S.C.'s assessment and performance. Plaintiff does argue that 45 minutes of weekly counseling following an "intensive psychiatric hospitalization" is insufficient and Plaintiff also takes issue with the fact that the plan offered psychological services on a consult basis rather than working with S.C. directly. Dkt. 59 at 18-19. Plaintiff does not cite to any portion of the record or to any authority to show how the proposed counseling and consulting psychological services were not "likely to produce progress, not regression or trivial educational advancement." *Michael F.*, 118

F.3d at 248. Again, the IEP need not maximize S.C.'s educational potential in order to comply with IDEA. Having reviewed the record as cited, the Court finds that the IEP developed for S.C. was individualized based on her assessment and performance and other relevant data.

*Least Restrictive Environment*

The IDEA requires that "to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in the regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

As to least restrictive environment, Plaintiff argues that "there was no consideration or discussion by the ARD Committee with respect to the 'continuum of alternative placements,' so the proposed BIC class cannot by default be the least restrictive environment." Dkt. 55 at 27. Plaintiff also argues that, at the due process hearing, Jessica Martin, the District's Licensed Specialist in School Psychology, testified that she could not say how many students would be in the BIC at any one time, but then argues that such a verbal amendment to the IEP at the hearing is not relevant. *See* Dkt. 59 (citing A.R. 2266:24-2267:2).

Defendant cites to the record to show that S.C.'s IEP was to be administered in the LRE. *See* A.R. 1098-1099, 1165-1166. While the September 2011 ARD committee initially recommended implementing S.C.'s IEP in the general education setting, based on Plaintiff's concerns, the ARD

committee agreed to consider the BIC class for increased supervision in the school setting. A.R. 1098-1099, 2265-2266. Then, when the ARD committee met to consider the Ziggurat Group's IEE in March 2012, it recommended that S.C. be placed in a general education setting with inclusion support and adult supervision at all times. A.R. 1169.

Based on the record before, the Court finds that Plaintiff has not shown by a preponderance of the evidence how the District's IEP failed to propose a program in the least restrictive environment. Although Plaintiff now appears to take issue with the proposal of a BIC, the testimony offered at the due process hearing indicates that it was proposed by the District in response to Plaintiff's concern that a general education setting would not provide the supervision S.C. needed and that S.C. needed to be in an environment with a smaller student to teacher ratio. *See* A.R. 2265-2266. That the District could not tell Plaintiff what the makeup of the BIC class would have been does not show that it was not, at that time, the least restrictive environment available. Plaintiff has not shown this factor by a preponderance of the evidence.

### *Services Provided in Coordinated and Collaborative Manner by Key "Stakeholders" & Demonstration of Positive Academic and Non-academic Benefits*

As to these two factors, Plaintiff has argued "there is no evidence to demonstrate whether or not these were actually possible." Dkt. 55 at 27. As noted above, Plaintiff has the burden of proof to show that these factors were not satisfied. Plaintiff's argument does not suffice in sustaining her burden.

In any event, as to stakeholders, Defendant has cited to the administrative record to show that S.C.'s IEP was also developed in a coordinated and collaborative manner by the key stakeholders

and that Plaintiff actively participated in the ARD committee meeting. A.R. 1067, 1099-1100, 1168-1171, 2179-2180, 2193. Without more from Plaintiff, the Court will not find any deficiency with the IEP based on a stakeholder argument. The Court's review of the record in this case indicates substantial involvement by many stakeholders, including actions taken by the District in response to the assessments of independent evaluators hired by Plaintiff.

As to any academic or non-academic benefits, such cannot be evaluated. Plaintiff withdrew S.C. from the District, declined consent to initial placement and further assessment, and the District's IEP was never implemented. A.R. 1067, 1101, 1168, 2179-2180, 2193. No challenge to the IEP can be based on this factor.

That Plaintiff characterizes the IEP as a "last-ditch effort of the District to provide a FAPE" (*see* Dkt. 55 at 27) does not make the IEP patently deficient, nor does it absolve Plaintiff of her evidentiary burdens here. Having examined this case under all four of the *Michael F.* factors, the Court finds that the preponderance of the evidence cited shows that LISD's IEP for S.C. was reasonably calculated to enable her to receive meaningful educational benefits and thus provided her with a FAPE in accordance with IDEA. The Court finds that Plaintiff should take nothing by her claim that that the SEHO erred, as a matter of fact and law, in finding the District provided a FAPE to S.C. Judgment should be granted for Defendant on this issue.

## Ziggurat Group Evaluation

Although the Court finds that the preponderance of the evidence supports a finding that the District provided S.C. with a FAPE, to ensure all of Plaintiff's points of error are addressed, the

Court addresses her objection to the SEHO's finding that the District's evaluation of S.C. was more substantial, thorough, and credible than the Ziggurat Group's evaluations of S.C. Plaintiff argues that the SEHO ignored the facts that the background, training, and experience of Drs. Aspy and Grossman, the Ziggurat evaluators, far outweighed that of the District's Licensed Specialist in School Psychology, Jessica Martin.

As noted above, in November 2011, at Plaintiff's request, the Ziggurat Group performed an IEE of S.C. which agreed with the District's diagnosis of emotional disturbance, but also recommended further assessment for an autism spectrum disorder and other issues. A.R. 1109-1140. When the District's ARD committee convened again on March 2, 2012 to review the IEE completed by the Ziggurat Group, it amended some of its recommendations for S.C., including a recommendation for an autism evaluation, but the meeting ended in disagreement regarding the District's classroom placement recommendation. A.R. 1142-1178. On May 17, 2012 (after Plaintiff filed her request for a due process hearing and while S.C. remained at Vanguard), the Ziggurat Group privately evaluated S.C. for autism at Plaintiff's request and found that she met the criteria of an individual with high-functioning autism together with an eligibility for emotional disturbance. A.R. 26, 561-607, 2193. The Ziggurat Group's findings were presented to the SEHO at the due process hearing, and Dr. Aspy testified regarding her assessment of S.C., as did Jessica Martin, who conducted the evaluations of S.C on behalf of the District.

In his findings, the SEHO discussed the testimony and evidence presented at the due process hearing. The SEHO noted that the observations of Plaintiff regarding S.C.'s behavior were different

from the professional observations of the District. *See* A.R. 9. In weighing the two, the SEHO found that District's evaluation was "more substantial, thorough, and credible than those of the Ziggurat Group" and cited to various exhibits in the record as well as the portions of the transcript of the hearing in support. *Id.*

The Court has reviewed the portions of the record cited by the parties regarding the Ziggurat Group's opinions and the District's assessments of S.C. and finds that the SEHO did not err in his findings. As to how substantial and thorough the assessment was, Defendant cites to the record to show that District used a variety of assessment tools to determine whether S.C. was a child with a disability, to determine the content of S.C.'s IEP, and to show that the evaluation materials used appropriately reflected S.C.'s aptitude and were sufficiently comprehensive to identify all of her needs. *See, e.g.*, A.R. 1029-1053; 2128, 2141-2145, 2150-2158. Defendant also cites to the administrative record to show that some of the Ziggurat Group's screening tools were not standardized or peer-reviewed, that some assessment tools and data, including certain past test scores and evaluation results and the Behavior Assessment System for Children ("BASC") measures, were not incorporated in the IEE, and that the IEE was not based on an in-school observation or on information from S.C.'s teachers at Vanguard. *See, e.g.*, A.R. 964-967, 1110, 1119, 1128-1301, 1886, 1888, 1916-1917, 1925-1926, 1961-1968, 1970-1975, 1989-1991, 2181, 2182, 2185-2186. Moreover, Defendant argues that the Ziggurat Group's evaluators failed to include any diagnoses from S.C.'s prior hospitalizations, none of which diagnosed S.C. with an ASD. A.R. 1964-1975; Dkt. 46-1, ¶62.

As to credibility, although the Court reviews the record *de novo*, as to this issue in particular, it gives the SEHO's findings due weight. *D.B. ex rel. C.B. v. Houston Indep. Sch. Dist.*, 2007 WL 2947443, at *11 (S.D. Tex. 2007) ("The hearing officer, who hears live testimony and can observe witness demeanor, is in the best position to determine issues of credibility."). In any event, the Court has reviewed the testimony of Aspy and Martin and finds that the record of the due process hearing supports the SEHO's credibility findings.

As to Plaintiff's argument that the Ziggurat Group's evaluators are more qualified because they hold doctorates compared to the District's evaluator Jessica Martin who is a Licensed Specialist in School Psychology without such a degree, although Plaintiff questions the number of autism evaluations she has conducted, Plaintiff has cited to nothing in the record to show that Martin was not qualified to conduct the underlying evaluation or render the opinions that she did. And Plaintiff has cited to no authority to show that the Court (or the SEHO) should give greater weight to an expert opinion merely because of the degree held by that expert. The Ziggurat Group's opinions are entitled to no greater deference than the opinions of Martin or other District officials. Indeed, "[s]chool personnel often have greater contact with a handicapped child than does a treating physician" and this Court and the SEHO are "certainly capable of assessing the individual circumstances of each case and evaluating the credibility of both medical and nonmedical witnesses." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 133, n15 (5th Cir. 1993).

The inquiry with any expert is whether that expert is qualified to render an opinion and whether that opinion is reliable and based on sound methodology. *See* FED. R. EVID. 702 & 703.

Although Plaintiff disagrees with Martin's opinions, she has not cited to anything in the record to show that it was error as a matter of law to consider her opinion or that the Court should not give deference to the District's evaluating psychologist's opinion or the SEHO's credibility assessment of it. Indeed, many courts have recognized the deference that should be given to a school district's professionals in considering whether a school district has complied with the IDEA. *See M.S. v. Poway Unified Sch. Dist.*, 2013 WL 4401673, at *5 (D. Cal. Aug. 14, 2013) (noting that "[a]ny differences of opinion between [the plaintiff's] expert and the [school district's] expert, without something more such as . . . discriminatory intent . . . [is] insufficient to overcome that deference"); *DiRocco v. Bd. of Educ. of Beacon City Sch. Dist.*, 2013 WL 25959, at *22 (S.D.N.Y. Jan. 2, 2013) (finding that "the [c]ourt is not at liberty to favor [the] opinion . . . of a privately hired expert, over the deference that should appropriately be accorded to the [school] [d]istrict in matters of educational policy"); *E.S. v. Katonah–Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417, 436 (S.D.N.Y. 2010) (stating that "the mere fact that a separately hired expert has recommended different programming does nothing to change [the] . . . deference to the district and its trained educators").

Moreover, the Court previously granted Plaintiff leave to supplement the administrative record with a sworn affidavit from Dr. Aspy containing her rebuttal opinions. *See* Dkt. 39. The Court also allowed Defendant to include as additional evidence any requisite counter-affidavits. The Court limited the scope of the rebuttal testimony and held that no new or repetitive opinions from Dr. Aspy would be considered. In granting Plaintiff leave to supplement the record, the Court noted that the weight and importance the Court would give to the rebuttal testimony would be determined

when the parties' briefing on the administrative record was before the Court.

The Court has reviewed the Supplemental Affidavit of Dr. Aspy. *See* Dkt. 43. The Court has also reviewed the counter-affidavit of Jessica Martin submitted by the District in response. *See* Dkt. 46-1. In her supplemental affidavit, Aspy questions many of the opinions offered by Martin during the due process hearing regarding the tools and methods used by the District in evaluating S.C. and screening her for autism. Martin responds in turn.

The Court finds that the majority of Aspy's affidavit constitutes a credibility attack on Martin on matters already addressed at the due process hearing and considered by the SEHO. The Court finds that this criticism does not tip the scale in Plaintiff's favor. Indeed, very little of Aspy's opinion addresses *how* the District failed S.C. in its evaluation or the manner in which the District failed to provide S.C. with a FAPE during the time period at issue before the Court (again, much of Aspy's opinion pertains to matters outside of the statute of limitations).

As to the deprivation of services specifically, Aspy does opine that the District's 504 Accommodation Plan did not address S.C.'s cutting behavior. *See* Dkt. 43 at 10. Martin's affidavit states that this is not true. Dkt. 46-1 at 10. The record supports Martin's position.

Even if it fell within the statute of limitations, the District's October 2010 504 evaluation noted S.C.'s cutting behavior and stated a need for future testing for special education services for emotional and academic concerns. A.R. 1022-1027. Although the BIP attached to it did not specifically note cutting, it did propose a general strategy to decrease inappropriate behavior through teacher assistance. A.R. 1026. Further, the resulting January 2011 FIE prepared by Martin addresses

S.C.'s cutting behavior and recommends that "increased supervision during class time should be employed to combat [S.C.]'s tendency to engaging in self-harming behaviors during the academic school day" and that teachers should be made aware of S.C.'s tendency to cut herself because it tends to decrease or disappear when she knows that she is being watched for such behavior. A.R. 1047-1048. For Aspy to say that the District did not address S.C.'s cutting behavior is simply not supported by the record.

The testimony and evidence referenced in the affidavits were considered by the SEHO at the due process hearing. The Court finds that the supplemental affidavits offered by the parties do not substantively alter the information or opinions before the SEHO as to the Ziggurat Group's evaluation of S.C. or criticism of the District's evaluation of her.

The Court also notes that there is some dispute in the parties' briefing regarding the District's attribution of some of S.C.'s emotional issues to her home environment (in particular, S.C.'s relationship with her mother) and specifically Martin's scores for "family discord" in her evaluation of S.C. Defendant's briefing sets forth, with specific record cites, the factors taken into consideration by Martin and the observations made regarding S.C. and her academic, social and emotional progress, including her relationships with her mother and her peers. *See e.g.*, Dkt. 56 at 13- 27.[15] The Court will not second guess this assessment and finds that it was conducted in

---

[15]Although the Court finds that the record here supports the District, the Court also finds that the record equally evidences a parent vigorously advocating for her child. Because the Court's analysis in this case, and all IDEA cases, is limited to whether the school district complied with the regulations set forth under the IDEA, no further discussion of S.C.'s home life is necessary, nor does it further the Court's purpose here.

developing an individualized education program for S.C.

Although the SEHO's findings are not conclusive and this Court must reach an independent conclusion based upon the preponderance of the evidence, the Court must also give the SEHO's findings "due weight." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). Defendant has cited to substantial evidence in the record that support the SEHO's credibility determinations and general assessment of the expert testimony presented. And the Court's review of the record here does not indicate that SEHO "erroneously assessed the facts or erroneously applied the law to the facts." *Id*. The Court finds that the administrative record supports the SEHO's finding that LISD's evaluation was more substantial, thorough, and credible than those of the Ziggurat Group.

Moreover, even taking into consideration the Ziggurat Report, the Court finds that Plaintiff has failed to demonstrate by a preponderance of the evidence that the District violated the IDEA in its assessment of S.C or how the District failed to provide S.C. with a FAPE. The Ziggurat Group's November 2011 IEE, which recommended further evaluation for an autism spectrum disorder and other issues, noted that the placement decision for S.C. was "the responsibility of the ARD committee" and that if S.C. were to return to LISD, she "would benefit from placement in the general education setting with special education support." A.R. 1139. At that time the Ziggurat Group did not affirmatively opine that LISD could not provide S.C. with an FAPE requiring placement in a private school setting.

The Court has taken into account all opinions offered and finds no IDEA violation. Judgment should be granted for Defendant on this point and no error has been shown in the SEHO's findings regarding Plaintiff's experts' opinions.

## Reimbursement

Finally, the Court addresses Plaintiff's claim that the SEHO erred, as a matter of fact and law, in denying reimbursement for her private placement of S.C. at the Vanguard Preparatory School and for the cost of providing private therapies to S.C. when those therapies or services should have been provided by LISD as related services.

For parents of a disabled child to be entitled to reimbursement for private schooling, they must show both that (1) the public placement violated the IDEA and that (2) the private school placement was proper under IDEA. *Florence County School Dist. Four v. Carter By and Through Carter*, 510 U.S. 7, 12-13, 114 S.Ct. 361, 365 (1993); *Town of Burlington v. Dep't. of Edu.*, 471 U.S. 359, 369-370, 105 S. Ct. 1996, 2002-2003 (1985). If reimbursement is appropriate, it can be retroactive from the time of placement in the private school. *Id.*

Because the Court agrees that LISD complied with the IDEA in its evaluation of S.C., Plaintiff is not entitled to reimbursement for the costs of Vanguard.

Because the Court finds compliance with IDEA, it does not address whether Vanguard was appropriate for S.C. or Plaintiff's complaint that the SEHO erred, as a matter of fact and law, in finding that her witnesses failed to establish credibly that the private placement at Vanguard was appropriate.

The preponderance of the evidence in the administrative record, together with the additional evidence submitted by the parties in this case, establishes that LISD complied with IDEA's processes and that S.C. educational needs were appropriately addressed. *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, __ F. 3d __, 2016 WL 157998, at \*2 (5th Cir. Jan. 13, 2016) (internal citations omitted). No violation of the IDEA has been shown, and no reimbursement is warranted.

For these reasons, the Court finds that Defendant Lewisville Independent School District's Motion for Judgment on the Administrative Record (Dkt. 54) should be GRANTED and Plaintiff's Motion for Judgment on the Administrative Record (Dkt. 55) should be DENIED. Plaintiff should take nothing by her claims here, and final judgment should be entered for Defendant. Defendant should be awarded its costs, and this matter should be closed on the Court's docket.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.; Thomas v. Arn*, 474 U.S. 140,

148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 23rd day of February, 2016.**


_____

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE